UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAMELA BATEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-1114-RLY-DML |
| ) | |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

# Order Granting in Part and
# Denying in Part Plaintiff's Motion to Compel

This matter is before the court on plaintiff Pamela Bateman's Motion to Compel (Dkt. 25). Ms. Bateman filed this action against Life Insurance Company of North America (LINA), her long-term disability insurer, for breach of the insurance contract and bad faith denial of her claim. After this court ordered counsel to confer on the issues raised by the motion to compel, they resolved several of them. LINA then filed a response brief and Bateman a reply addressing only their remaining disputes. The court heard oral argument on May 12, 2009. As explained below, Ms. Bateman's motion to compel is GRANTED in part and DENIED in part.

Ms. Bateman has asked the court to compel LINA to respond to the following discovery requests:

**Interrogatories:**

14. Please provide the number of State Farm Mutual independent contractors and employees who have received disability benefits from LINA since January 1, 2004.

15. Please provide the number of State Farm Mutual independent contractors and employees who have applied for disability benefits since January 1, 2004.

16. Please provide the number of State Farm Mutual independent contractors and employees who have received disability benefits from LINA which benefits have been denied or terminated since January 1, 2004.

17. Please state the name and current and last known residence address of all persons insured by the Defendant under the long term disability policy covering State Farm Mutual independent contractors and employees whose benefits have been denied or terminated since January 1, 2004.

**Requests for Production**

9. Copies of any and all underwriting materials utilized at any time in the handling of Plaintiff's long term disability claim, including informative materials, medical treatises, medical summaries, dictionaries, etc.

22. All census information related to the disability coverage for State Farm Mutual independent contractors and employees obtained since January 1, 2004.

23. Any profitability analysis regarding the disability coverage for State Farm Mutual independent contractors and employees since January 1, 2004.

24. Any cash flow analysis performed regarding the disability coverage for State Farm Mutual independent contractors and employees including interest rate projections, investment income, premium amount charged and loss statements.

27. 1099 forms that show amounts paid by LINA for the years 2002-2007 to any medical professional, or their employers, who were involved in this claim.

29. The performance evaluations, performance reviews or performance evaluations for each LINA employee who was involved in this claim for the years 2002-2007.[1]

31. Management reports showing liability acceptance rates for State Farm Mutual independent contractors and employee disability claims for the years 2003-2007.

---

[1] LINA's response does not identify Requests for Production 27 and 29 as contested, but Bateman's reply assumes they are still subject to the motion, and they were addressed at oral argument.

> 32. Management reports showing approval rates for State Farm Mutual independent contractors and employee disability claims for the years 2003-2007.
>
> 33. Management reports showing the denial rates on the rates for State Farm Mutual independent contractors and employee disability claims for the years 2003-2007.
>
> 34. Management reports showing the termination rates [ ] the State Farm Mutual independent contractors and employee disability claims for the years 2003-2007.

Federal Rule of Civil Procedure 26(b) provides the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

While the scope of discovery is broad under Rule 26, that rule confers broad powers on the court to regulate or deny discovery even though the materials sought are otherwise within the scope of Rule 26(b)(2). Rule 26(b) provides that the scope of discovery may be "limited by court order" and Rule 26(c) requires the court to limit discovery if the court determines that the burden on one party outweighs the benefits to the other.

Ms. Bateman maintains that the information listed above is relevant to her bad faith claim. Determining the proper scope of discovery requires consideration of the nature of that claim under Indiana law. Although it did not suggest it was providing an exhaustive list of "bad faith" conduct, the Indiana Supreme Court in *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind. 1993), noted that an insurance company cannot (1) make an unfounded refusal to pay policy proceeds, (2) cause an unfounded delay in making payments, (3) deceive the insured, or (4) exercise an unfair advantage to pressure an insured to settle a claim. *Id.* at 518-19.

The information Ms. Bateman seeks from LINA falls into four general categories: (1) numerical data about the number of claims applications made by State Farm Mutual independent contractors (the group of which Ms. Bateman is a member) and the actions taken on those applications (approved, denied, or initially approved but later terminated) (Interrogatories 14-16, Requests for Production 31-34); (2) information identifying those whose claims have been denied or benefits terminated (Interrogatory 17); (3) financial and underwriting data relating to disability policies issued to State Farm Mutual independent contractors (Requests for Production 9 and 22-24); and (4) information about remuneration or other incentives provided to the individuals who reviewed Ms. Bateman's claim (Requests for Production 27 and 29).

This court has previously addressed discovery requests similar to the first two categories described above. In *Sieveking v. Reliastar Life Ins. Co*., 257 F.R.D. 173 (S.D. Ind. 2009), the plaintiff had requested disclosure of all claim files reviewed by the insurance company's claims administrator during the two-year period relevant to the plaintiff's claim. Magistrate Judge Hussmann found that production of these claim files would not likely lead to the discovery of evidence relevant to the bad faith claim and would be unduly burdensome, unless some limited discovery first revealed that a large percentage of claims had been denied. *Id*. at 175 n. 1-2. Noting that individual claim decisions are "extremely fact-sensitive, Judge Hussmann created two phases of discovery: For the first phase, he ordered the defendants to supplement their interrogatory answers to identify the total number of claims they reviewed and the total number of those claims denied on the basis of the claims administrator's recommendation. *Id*. at 175 n.1-2; for the second phase, if the data indicated an extremely large percentage of claim denials, further discovery of the underlying claim files could be warranted to show that the administrator was merely a device the insurance company used to establish purported justification for denial of

claims. *Id*. at 175.  But unless and until the data suggests such an inference, requiring the underlying file information on other claims would "simply expand the scope of this litigation to an unreasonable degree." *Id*.  The relevance of those files would depend on things like what medical conditions were involved and whether the language in the policies was the same as that of the plaintiff's policy.  More important, the focus of the litigation would be shifted from the case at hand, because the insurer would be required to defend all of those claim denials.  The relevance of this information would therefore by substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, and undue delay and waste of time.[2]

Ms. Bateman's requests here, however, are more narrow than those at issue in *Sieveking*.  For the most part, she does not at this point seek claims files on other denied claims.  Instead, she seeks only the numerical data regarding other claims that may permit her later—depending on what the data shows—to seek deeper information about other claims.  In other words, she seeks the "first phase" information Judge Hussmann permitted in *Sieveking*.  This magistrate judge finds the rationale of *Sieveking* persuasive and applicable here.  The court therefore GRANTS the motion to compel responses to Interrogatories 14, 15, and 16, and Requests for Production 31, 32, 33, and 34.  Interrogatory 17 goes beyond numerical data because it seeks names and addresses of other claimants who were denied benefits, and that request is DENIED.

The third category of information sought—underlying financial data about the type of policy at issue here—is similar in attenuated relevance and undue burden as information about claims files other than Ms. Bateman's.  Ms. Bateman has argued that this financial information may show, for example, that LINA underpriced this type of policy and was attempting to

---

[2] Judge Hussmann ultimately determined that "phase two" discovery would not be permitted because the number of denials relative to claims made did not raise the requisite inference. *Id*.

ameliorate the financial consequences by denying proper claims for benefits. The relevance of this information is highly suspect, speculative, and its production would threaten to confuse the issues in this case—particularly when there's been no threshold showing of an extremely high percentage of denials. The motion to compel responses to Requests for Production 9, 22, 23, and 24 is therefore DENIED.

Finally, Ms. Bateman wants information she thinks will tend to show bias on the part of those who reviewed her claim. She wants to know how much LINA has paid, over a six-year period, the medical professionals who reviewed her claim (Request for Production 27), and she wants LINA to produce the evaluations or performance reviews of the LINA employee(s) who reviewed her claim (Request for Production 29). In the similar—but not identical—context of discovery in ERISA cases resulting from the Supreme Court's decision in *Met. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2347-48, 171 L.Ed.2d 299 (2008), courts have permitted discovery aimed at policies by which the defendant formally or informally rewards or encourages claims denials. 128 S.Ct. at 2351; *McQueen v. LINA*, 595 F.Supp.2d 752, 755-56 (E.D. Ky. 2009). Although the "structural conflict" concept addressed in *Glenn* is not the same as the bad faith claim here, the issues are similar, and a fact finder could infer, for example, that a company policy incentivizing the denial of claims for reasons other than their merits is evidence of an "unfounded refusal" constituting bad faith. Moreover, the court finds that these requests are narrowly drawn and would not create an undue burden for LINA to respond. The court therefore GRANTS the motion to compel as to Requests for Production 27 and 29.

The court orders LINA to respond to the discovery requests consistent with this order within thirty days. To the extent the court has denied the motion to compel, that denial is

without prejudice to Ms. Bateman's right to seek the discovery at another juncture, subject to the showing required by this order.

So ORDERED.

Date: 07/24/2009

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Frank N. Darras
SHERNOFF BIDART DARRAS ECHEVERRIA, LLP
fdarras@sbdelaw.com

Jennifer Jay Kalas
HINSHAW & CULBERTSON
jkalas@hinshawlaw.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com

Daniel Keenan Ryan
HINSHAW & CULBERTSON
dryan@hinshawlaw.com

Amanda Lynn Yonally
O'RYAN LAW FIRM
ayonally@oryanlawfirm.com